IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**JUL 2 8 2004**

Bacus Laboratories, Inc.,

    Plaintiff,

**FILED**

v.

JUL 2 3 2004

Aperio Technologies, Inc., and
Dakocytomation California, Inc., d/b/a
Dako Corporation,

    Defendants.

Docket Number: 02 C 9073

Assigned Judge: Judge Kennelly

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

TO:    Karl R. Fink
        FITCH, EVEN, TABIN & FLANNERY
        Suite 1600
        120 South LaSalle Street
        Chicago, IL 60603-3406

PLEASE TAKE NOTICE that on the 23rd day of July, 2004, we filed with the Clerk of
the United States District Court for the Northern District of Illinois, Eastern Division, 219 South
Dearborn Street, Chicago, IL 60601, a Proposed Claim Construction of Disputed Terms of The
Asserted Claim, on behalf of Dakocytomation California, Inc., d/b/a Dako Corporation and Irell
& Manella LLP, a copy of which is attached hereto and herewith served upon you.

                              APERIO TECHNOLOGIES, INC. and
                              DAKO CORPORATION

                        By: _Shannon L. Clark_
                           One of its attorneys

| | |
|---|---|
| Anthony J. Dain (Pro Hac Vice) | Robert A. Carson |
| Pattric J. Rawlins (Pro Hac Vice) | Shannon L. Clark |
| Procopio, Cory, Hargreaves & Savitch LLP | GOULD & RATNER |
| 530 B Street, Suite 2100 | 222 North LaSalle Street, Eighth Floor |
| San Diego, California 92101-4469 | Chicago, IL 60601 |
| Telephone:    (619) 238-1900 | Telephone:    (312) 236-3003 |
| Facsimile:    (619) 235-0398 | Facsimile:    (312) 236-3241 |

04 JUL 23 PH 5: 05

CLERK
U.S. DISTRICT COURT

/251759

## CERTIFICATE OF SERVICE

I, Mary E. Lites, a non-attorney, hereby depose and state that I caused a true and correct

copy of Defendant's Proposed Claim Construction of Disputed Terms of The Asserted Claim , a

copy of which is attached, to be served, via hand delivery, by 5:00 p.m. on Monday, July 26,

2004, upon:

John F. Flannery
Karl R. Fink
Michael G. Vranicar
FITCH, EVEN, TABIN & FLANNERY
Suite 1600
120 South LaSalle Street
Chicago, IL 60603-3406
(312) 577-7000

Mary E. Lites

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DOCKETED

JUL 2 8 2004

Bacus Laboratories, Inc.,

FILED

JUL 2 3 2004

v.

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Aperio Technologies, Inc., and
Dakocytomation California
Dako Corporation,

      Defendants

Civil Action No. 02 CV 9073
Consolidated with No. 03 CV 2352

**DEFENDANTS' PROPOSED CLAIM
CONSTRUCTION OF DISPUTED
TERMS OF THE ASSERTED CLAIMS**

Honorable Matthew F. Kennelly
Magistrate Judge Ian H. Levin

**DEFENDANTS' PROPOSED CLAIM CONSTRUCTION
OF DISPUTED TERMS OF THE ASSERTED CLAIMS**

RECEIVED FOR DOCKETING

ED 12

04 JUL 23 PH 5: 05

U.S. DISTRICT COURT
CLERK

110630.00001 1/479255.02

57

# TABLE OF CONTENTS

I.   The Parties and Their Technologies ................................................................3
     A.   Bacus' Image Tiling Technology.............................................................3
     B.   Aperio's Line Scanning Technology .........................................................4

II.  Applicable Law Regarding Claim Construction.................................................5

III. Claim Construction for Patent Number 6,272,235 ...........................................6
     A.   Claim 1 of the '235 Patent .....................................................................6
          1.   image tiles .......................................................................................7
          2.   data structure of images ................................................................11
          3.   digitally scanning ..........................................................................13
     B.   Claim 33 of the '235 Patent ..................................................................15
          1.   virtual microscope slides.................................................................16
          2.   the original optical image ...............................................................18
     C.   Claim 59 of the '235 Patent ..................................................................20
          1.   contiguous fields of view ................................................................20
          2.   edge alignment data ........................................................................22
          3.   reconstructing contiguous images ....................................................23

IV.  Claim Construction for Patent Number 6,522,774 ...........................................24
     A.   Claim 1 of the '774 Patent ....................................................................24
          1.   original microscope images .............................................................24
          2.   a viewer .........................................................................................26
     B.   Claim 14 of the '774 Patent ..................................................................27
          1.   mapping coordinates .......................................................................27

V.   Claim Construction for Patent Number 6,396,941 ...........................................29
     A.   Claim 1 of the '941 Patent ....................................................................29
          1.   control information .........................................................................29
     B.   Claim 2 of the '941 Patent ....................................................................31
          1.   zooming.........................................................................................31
     C.   Claim 64 of the '941 Patent ..................................................................32
          1.   slide tray information ......................................................................32

VI.  Conclusion ......................................................................................................34

## I.     The Parties and Their Technologies

Plaintiff, Bacus Laboratories, Inc. ("Bacus") initially brought the present action against defendant Aperio Technologies, Inc. ("Aperio") for infringement of U.S. Patent No. 6,466,690[1] ("the '690 Patent").  Subsequently, Bacus amended its complaint to allege infringement of U.S. Patent Nos. 6,272,235[2] ("the '235 Patent"), 6,396,941[3] ("the '941 Patent"), and 6,522,774[4] ("the '774 Patent") by Aperio and the newly named co-defendant Dakocytomation California, Inc. ("Dako") (collectively "Aperio" or "Defendant").

After the initial claim construction charts were exchanged by the parties, Bacus significantly reduced the number of claims being asserted from well over 200 to just 30 claims. Additionally, Bacus also now intends to stay or dismiss without prejudice its assertions of infringement of the '690 Patent pending the results of the *inter partes* reexamination that has been pending before the Patent Office since May of 2003.

### A.     Bacus' Image Tiling Technology

The claims in the asserted patents are described in the corresponding written descriptions as using a fixed area CCD camera to separately scan hundreds or even thousands of individual image tiles that are each stored as a separate file on a computer hard drive.  The rectangular CCD camera is located in the high resolution center area of the field of view of an objective lens so that each image tile that is captured contains a focused image.  When an individual image tile is captured, the X-Y location of the top left corner of the rectangular CCD camera is recorded according to an extremely precise coordinate system of the system's custom built motorized microscope slide stage.  The file name for the image tile and the X-Y location of its top left corner are then each entered into a data file.  Collectively, the data file with its file names and coordinates, along with each of the individual image tile files comprise a data structure called a virtual slide.  To view a virtual slide, the claimed system abuts each individual image tile on the display screen of a computer monitor according to the image tile's X-Y location coordinates that are stored in the data file.

---

[1] See Exhibit A.
[2] See Exhibit B.
[3] See Exhibit C.
[4] See Exhibit D.

**B.    Aperio's Line Scanning Technology**

The Aperio ScanScope® product is different. The ScanScope® product is not an image tiling device and is, in fact, separately patented.[5] The ScanScope® uses a line scan camera to pass over the full length of a microscope slide and capture a complete stripe of image data. Subsequent passes capture additional stripes and these stripes are combined to create a single TIFF[6] file. The single TIFF file contains a single image and is called a virtual slide. This single file / single image virtual slide is unlike the thousands of image tiles stored in thousands of separate files that an image tiling system requires for a virtual slide. According to the TIFF standard, the image in the TIFF file is logically divided into manageable sized data blocks.[7] The data blocks, as defined by the TIFF standard, can be compressed using a variety of compression techniques, for example, JPEG[8] or JPEG2000.

In operation, the line scan camera generates image signals for a plurality of slightly overlapping stripes that span the entire scan area of the microscope slide. The image signals from the line scan camera are populated into the virtual slide TIFF file by the ScanScope® and the data blocks in the TIFF file are compressed, typically according the JPEG2000 standard. The ScanScope® may populate the virtual slide TIFF file in two ways: (1) inter-stripe compression; and (2) post processing compression. In the inter-stripe compression mode, the imagery data is populated into the virtual slide TIFF file directly from buffer memory. In the post-processing compression mode, the imagery data is populated into the virtual slide TIFF file from a TIFF stripe that is temporarily placed on the hard disk drive of the ScanScope® computer.

The Aperio ImageServer product is a software product that runs on a server computer that stores one or more virtual slide TIFF files. The ImageServer software provides the imagery data contained in a virtual slide TIFF file to the Aperio ImageScope product or to a standard web browser. The ImageServer software can provide the imagery data from the virtual slide TIFF file either directly or via a network. The Aperio WebViewer product is a software product that

---

[5] U.S. Patent No. 6,711,283 was issued on March 23, 2004. See Exhibit E.

[6] TIFF is an acronym for the Tagged Image File Format for storing and interchanging raster images. The TIFF specification was originally published in 1986 by Aldus Corporation. Version 6.0 of the TIFF standard was published in June, 1992.

[7] TIFF 6.0 Specification, 1992, page 66. (note: a copy of this reference is not attached as an exhibit because it is extrinsic evidence in the context of claim construction.)

[8] JPEG is an acronym for the Joint Photographics Expert Group, created in 1986. JPEG has defined several image compression standards including JPEG and JPEG2000 and a file format standard called JFIF. (note: copies of the specifications for these standards are not attached as exhibits because they are extrinsic evidence in the context of claim construction.)

works in cooperation with the ImageServer software and is installed on a web server computer. The WebViewer software enables remote viewing of imagery data from a virtual slide TIFF file on a standard web browser.

## II.    Applicable Law Regarding Claim Construction

In construing claims, the analytical focus must be centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the applicant regards as his invention." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed.Cir.2001) (quoting 35 U.S.C. § 112, ¶ 2). There is a heavy presumption that the terms used in the claims have the ordinary meaning that would be attributed to those words by persons skilled in the relevant technology. See *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed.Cir.2002); see also, *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362-63 (Fed.Cir.1999). A claim term is to be given the full range of its ordinary meaning as understood by persons skilled in the relevant technology unless there is a compelling reason not to do so. See *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed.Cir.2001); see also *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.Cir.1999).

To determine the ordinary and customary meaning of a claim term, we may review sources including the claims themselves, see *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed.Cir.1999); dictionaries and treatises, *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed.Cir.2002); and the written description, drawings, and prosecution history, *see, e.g., DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1324 (Fed.Cir.2001).

The Federal Circuit has recently indicated that a court can and should consult dictionary definitions in construing claim terms. *Texas Digital Systems, Inc., v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed.Cir.2002). Dictionaries that are publicly available when the patent was issued are objective resources that serve as reliable sources of information on the established meanings that would have been attributed to the terms of the claims by persons skilled in the relevant technology and thus may be the most meaningful sources of information to be used in claim interpretation. Id. at 1203.

Because particular words may have multiple dictionary definitions, some of which may have no relation to the claimed invention, the intrinsic record must always be consulted to identify which of the different possible dictionary meanings of the claim terms in issue is most

consistent with the inventor's use of the terms. *Texas Digital*, 308 F.3d at 1203. The intrinsic record must also be examined to determine whether the presumption of ordinary and customary meaning is rebutted. If, for example, the specification contained in the patent uses a term in a manner "clearly inconsistent" with the ordinary meaning as shown by a dictionary definition, then the dictionary definition must be rejected. *Id.* When, in the context of a claim, the inventor has used a term in a manner that deviates from its ordinary meaning, the patentee is said to have acted as his own lexicographer. In such a case, the intrinsic record is reviewed to see how the patentee has used the term and the patentee's use of the term in the written description trumps the ordinary and customary meaning that otherwise would have attached. *International Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1373 (Fed. Cir. 2004).

It is inappropriate, however, to consult the intrinsic record to determine the meaning of claim terms before attempting to discern the ordinary and customary meanings attributed to the words themselves. *Id.* To do so would violate the rule that limitations from the specification may not be imported into the claims so as to limit their scope. *Id.; see generally Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed.Cir.1995) ( "[A] patent claim is not necessarily limited to a preferred embodiment disclosed in the patent."); *SRI Int'l, Inc. v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 n. 14 (Fed.Cir.1985) (*en banc*) ("That a specification describes only one embodiment does not require that each claim be limited to that one embodiment.").

## III.     Claim Construction for Patent Number 6,272,235

### A.     Claim 1 of the '235 Patent

1. A method of constructing and using a <u>data structure of images</u> from a specimen on a microscope slide using a microscope having an objective lens comprising:

    <u>digitally scanning</u> and storing images from the specimen on a microscope slide to create a plurality of individual contiguous <u>image tiles</u> at a resolution finer than the optical resolution of the objective lens of the microscope and with a digital spacing between pixels finer than the optical resolution of the objective lens;

    providing a control program for the data structure for viewing, manipulating and reconstructing the image tiles; and

transferring the scanned, digital image tiles over an Internet or intranet communication channel; and

using the control program to allow viewing of a digital reconstructed composite image formed from contiguous image tiles of a substantially larger image area than the area of the individually acquired tiles.

### 1.     image tiles

The phrase "image tile" in the singular should be construed to mean: "an optical reproduction of a single field of view from the objective lens of a microscope, separately scanned and separately stored as a standard image file."

### A. Dictionary

A relevant dictionary definition of the word image is "An optically formed duplicate, counterpart, or other representative reproduction of an object, especially an optical reproduction formed by a lens or mirror." *American Heritage Dictionary of the English Language* (4th Edition 2000) ("Am. Heritage").[9]

A relevant dictionary definition of the word tile is "1. A thin, flat or convex slab of hard material such as baked clay or plastic, laid in rows to cover walls, floors, and roofs; 2. A short length of pipe made of clay or concrete, used in sewers and drains; 3. A hollow fired clay or concrete block used for building walls; 4. Tiles considered as a group; 5. Games A marked playing piece, as in mahjong." (Am. Heritage).

An alternative dictionary definition provided by Bacus is "sub-section or part of a larger bitmapped image." *Dictionary of Photography and Digital Imaging* (Thomas Ang, Amphoto Books 2002) ("DPDI"). This reference, however, was first published in the United Sates in 2002. The '235 Patent was filed in 1998 and issued in 2001. Accordingly, this reference is not contemporaneous with the '235 Patent and its definitions should not be considered. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003) *reh'g en banc denied* (Fed. Cir. 2003).

---

[9] The electronic version of the *American Heritage Dictionary of the English Language* (4th Edition 2000) was consulted for many of the definitions contained herein. A copy of each of the definitions used is included with Exhibit F.

## B. Context in Claim

In claim 1, the phrase "image tile" is used in the context of digitally scanning and storing images to create a plurality of individual contiguous image tiles. In claim 1, an image tile is created by digitally scanning and storing that which is seen through the objective lens of a microscope (i.e., its field of view).

The context of the word "image" as it is used in the claim is congruent with the dictionary definition in that the "image" in the claim is an optical reproduction formed by the objective lens of a microscope. This context is not a departure from the ordinary meaning.

The context of the word "tile" as it is used in the claim departs from the term's ordinary meaning as set forth in both the American Heritage resource as well as the DPDI resource (assuming the Court decides to consider that resource). With respect to the American Heritage definition, it is clear that the meanings are different. With respect to the DPDI definition (if considered) the context is different because when the objective lens of claim 1 makes an optical reproduction of its field of view, that "tile" is a discrete entity and is not a sub-section of any larger bitmapped image. It is a separate image all by itself. Manifestly, when the very first "image tile" is captured by the objective lens of the microscope and there is only one "image tile," there is no other larger bitmapped image for it to be a sub-section of. Thus, the context of the word "tile" as it is used in the claim indicates that the definition found in the DPDI resource (if considered) is not the definition intended by the patentee. Accordingly, when the patentee's use of the term in the context of the claim is inconsistent with the ordinary meaning, the patentee has acted as his own lexicographer and the specification and file history must be consulted for guidance as to how the patentee has used the term. *International Rectifier,* at 1373 (Fed. Cir. 2004).

## C. Review of Specification and File History

The specification and file history of the '235 Patent consistently use the phrase "image tile" to mean a separately scanned and separately stored standard image file containing an optical reproduction of a single field of view from the objective lens of a microscope. The phrase is used so regularly and consistently throughout the description of the invention that the phrase is imbued with a very particular and specific meaning. Upon a review of the written description, one having ordinary skill in the art would understand the phrase to mean a separately scanned

and separately stored standard image file containing an optical reproduction of a single field of view from the objective lens of a microscope. For example:

> "This means each of the 80 image segments will be scanned separately and stored as a separate image tile." (Column 11, Lines 28 – 30).

> "Each of the stored data image tiles is a standard image file" (Column 11, Line 60).

> "The focusing system is programmed to step through increments which detect/select only the high resolution center area of the field of view in order to avoid storing the fuzzy areas at the periphery of the field of view. In this example, the macro image will be stored in a 10 by 8 array, for a total of 80 contiguous image tiles, as shown in FIG. 1A." (Column 11, Lines 18 – 24).

> "For each of the 80 image areas, the microscope lens will detect only the high resolution center area of the field of view." (Column 11, Lines 39 – 41).

> "Unlike the single, small optical field of view currently available, the remote user is provided with a series of abutted, tiled images each being substantially equal to one small optical field of view." (Column 4, Lines 51 – 54).

These citations are not merely descriptions of a preferred embodiment. The specification for the '235 Patent, only describes an "image tile" as one thing: a standard image file containing an optical representation of a single field of view from the lens of a microscope. The last quote above clearly states that a tiled image is substantially equal to one small optical field of view. The quote that says "In this example…" is referring to an example of the magnification of the objective lens, which determines how many image tiles must be scanned in order to cover the desired area. Throughout the specification and claims, the phrase "image tile" is consistently used to mean an optical reproduction of a single field of view from the objective lens of a microscope, separately scanned and separately stored as a standard image file.

In the background, the '235 Patent also states:

> "The overall view was constructed by taking by a large number of low magnification images of the specimen through a microscopic scanning system and then coherently assembling and coordinating these respective smaller views or images (hereinafter "image tiles") into one coherent, low magnification, macro image from the specimen. Often the digitized macro image is reduced in size by a software system to even a smaller size to be displayed on a local screen or to be transferred over a low bandwidth or a high bandwidth channel to a remote viewing screen." (Column 2, Lines 8 – 17).

This is not inconsistent with the proffered construction. The respective smaller views or images (defined as image tiles here in the background section) were obtained through a microscopic scanning system that, as described in the specification, has an objective lens with a field of view and each separate scan of that field of view results in a separately stored image tile. Furthermore, the quote from column 4, lines 51 – 54 also refers to one "one small optical field of view" which agrees with the "smaller views" language used in this passage from the background.

Upon a review of the disclosure in the specification, one of ordinary skill in the art would understand from the written description that an "image tile" is a discrete, separately scanned and separately stored standard image file that contains an optical reproduction of one field of view from the objective lens of a microscope.

D. Bacus' Proposed Construction Fails

Bacus' proposed construction is beyond the scope of the ordinary meaning of the phrase as used in the context of the claim and is not supported by the patentees' use of the phrase in the written description. For example, when the microscope in claim 1 makes an optical reproduction of the field of view seen through its lens, that single field of view is a discrete entity and is not a sub-section of any other image. Importantly, when the first "image tile" is digitally scanned by the objective lens of the microscope and there is only one "image tile," there is no larger image for it to be a sub-section of. Thus, Bacus' proposed construction of "image tile" as a sub-section of an image must fail.

Furthermore, Bacus' proposed construction is contrary to the teachings of the specification and not supported by the written description. The specification teaches that when an image tile is scanned, the optical array sensor sends electrical signals indicative of the detected image to microscope controlled computer 32. Then, computer 32 stores the scanned image including the top left X-Y stage coordinates for the image tile. (Column 11, Lines 45 – 50). If an "image tile" is merely a sub-section of an image, the X-Y coordinate information for each image tile would become meaningless. For example, if the sub-portion of the composite image did not begin at a recorded X-Y coordinate value, then the system taught and claimed by Bacus would be unable to display such an image tile in proper orientation with other image tiles. The system would therefore be unable to arrange the image tiles on the display screen of a computer monitor such that they presented a composite replica of the specimen as it appeared on the microscope slide. Thus, a construction of the phrase that allows an image tile to have vague

or amorphous boundaries would confound the invention that is set forth in the written description. Accordingly, Bacus' proposed construction of "image tile" as a sub-section of an image must fail.

### 2. data structure of images

The phrase "a data structure of images" should be construed to mean: "a collection of data components including image tiles and their mapping coordinates."

A. Dictionary

A relevant dictionary definition of the phrase **data structure** is: "a collection of data components that are constructed in a regular and characteristic way." *McGraw-Hill Dictionary of Scientific and Technical Terms* (Sybil P. Parker ed., 5th ed. McGraw-Hill, Inc. 1994).[10] A definition of the word **data** is: "2. *Computer Science* Numerical or other information represented in a form suitable for processing by computer." (Am. Heritage). A definition of the word **structure** is: "1. Something made up of a number of parts that are held or put together in a particular way: hierarchical social structure." (Am. Heritage).

A relevant dictionary definition of the word **image** as set forth above is: "An optically formed duplicate, counterpart, or other representative reproduction of an object, especially an optical reproduction formed by a lens or mirror." (Am. Heritage).

B. Context in Claim

In claim 1, the phrase "**data structure of images**" is used in the preamble in the context of a method for constructing and using a data structure of images. Additionally, the context of the phrase as used in the body of the claim is providing a control program for the data structure for viewing, manipulating and reconstructing the image tiles.

The ordinary meaning of the phrase, according to the technical dictionary and the regular dictionary, agree that a data structure of images is a collection of components or a number of parts. Those components or parts, according to the context of the claim include the image tiles. Thus, the context suggests the ordinary meaning to be a collection of image tiles.

---

[10] A copy of the definition used from the *McGraw-Hill Dictionary of Scientific and Technical Terms* is attached as Exhibit G.

## C. Review of Specification and File History

When reviewing the specification and file history of the '235 Patent, it is clear that the patentee has limited its use of the phrase "data structure of images" to mean a collection of data components including image tiles and their mapping coordinates. The specification is so uniformly consistent in its use of the phrase that it has imbued the definition of the phrase "data structure of images" to require both images tiles and their mapping coordinates. For example:

"This is achieved by assembling together several adjacent, original microscope views at a first magnification to obtain an overall macro view of the specimen and assembling together several adjacent original microscope views at a higher magnification to create a combined data structure. The data structure is constructed by digitally scanning and storing the low magnification images with their mapping coordinates and likewise, digitally scanning and storing higher magnification images with their mapping coordinates." (Column 4, Lines 24 – 36).

"The first step in creating a data structure according to the invention is to establish a macro image of the entire specimen (or that portion of the specimen desired to be stored as the macro image)." (Column 11, Lines 3 – 7).

"Once the user has completed selecting and having the computer controlled microscope system scan and store the digital images in image tiles, computer 32 stores the mapped .bmp files along with their coordinate information and creates slide image data structure 31 in FIG. I. Slide image data structure includes all of the bitmap image tile files at both magnifications (note that similarly, additional images could be stored at further magnifications, if desired), as well as X-Y coordinate information for the location of the various image tiles." (Column 12, Lines 46 – 55).

"FIG. 7A is a file listing such as would be seen under a Windows 95 file manager showing the data files included in a data structure for a breast cancer specimen. Included in the file listing are FinalScan.ini and SlideScan.ini as well as sixty bitmap data files. Slidescan.ini is a listing of all the original bitmap (.bmp) files. The bitmap files represent the individual image tiles in the scan at, say, 1.25 times magnifications. Slidescan.ini is set forth below in Table 1 and describes the X-Y coordinates for each image tile file." (Column 12, Lines 56 – 64).

"Table 2 is a listing of the file FinalScan.ini, which is a listing the X-Y coordinates of the high magnification image tiles scanned and stored." (Column 14, Lines 40 – 42).

The last two passages above describe a particular embodiment and as such the phrase data structure should not require the particular file names illustrated in Table 1 and Table 2 or the

particular number of bitmap (.bmp) files shown or their specific mapping coordinates. However, the passages do illustrate that Bacus uses the phrase "data structure of images" to mean a collection image tiles and their mapping coordinates. This construction also agrees with the ordinary meaning of the phrase.

Accordingly, upon a review of the claim and the corresponding written description, one having skill in the art would understand that the phrase "**data structure of images**" was intended by the patentee to mean: "a collection of data components including image tiles and their mapping coordinates," which is the ordinary meaning of the phrase.

### 3. digitally scanning

The phrase "digitally scanning" should be construed to mean: "receiving image signals representative of a field of view from the objective lens of a microscope and converting the image signals into digital form" where "digital" means "expressed in numerical form."

A. Dictionary

A relevant definition of the word **digital** is: "4. Expressed in numerical form, especially for use by a computer; 5. *Computer Science* Of or relating to a device that can read, write, or store information that is represented in numerical form. See Usage Note at virtual."[11] (Am. Heritage).

A relevant definition of the word **scan** is: "5. *Electronics* a. To move a finely focused beam of light or electrons in a systematic pattern over (a surface) in order to reproduce or sense and subsequently transmit an image; b. To move a radar beam in a systematic pattern over (a sector of sky) in search of a target; 6. *Computer Science* To search (stored data) automatically for specific data; 7. Medicine To examine (a body or body part) with a CAT scanner or similar scanning apparatus; **8. To digitally encode (text, for example) with an optical scanner.**" (Am. Heritage).

A relevant definition of the phrase **encode** is: "2. *Computer Science* To format (electronic data) according to a standard format." (Am. Heritage). A relevant definition of the phrase **optical scanner** is: "A device that converts printed images and text into digital information that can be stored as a computer file and processed by graphics software." (Am. Heritage).

---

[11] The usage note for virtual is set forth in its entirety in the definition attached with Exhibit F and also set forth entirely below with respect to the construction of "virtual microscope slides."

B. Context in Claim

In the claim, the phrase is used in the context of digitally scanning and storing images from the specimen on a microscope slide to create a plurality of individual contiguous image tiles at a resolution finer than the optical resolution of the objective lens of the microscope and with a digital spacing between pixels finer than the optical resolution of the objective lens.

Here, the context in which the phrase is used indicates that the "scanning" is done by an optical scanner, although not the ordinary meaning type of optical scanner that converts printed pages and text into digital information. Here, the optical scanner is a unique device that has a microscope objective lens and the ability to "scan" at a resolution finer than the optical resolution of the objective lens of the microscope with a digital spacing between pixels finer than the optical resolution of the objective lens. Thus, the patentee has chosen to use the phrase outside of the context of the ordinary meaning of the words "digitally" and "scanning." *International Rectifier*, at 1373 (Fed. Cir. 2004).

Because the plain meaning of the word "digital" is "expressed in numerical form," then the digital spacing concept in the claim clearly makes the patentee's use of the word "digital" fall outside of the ordinary meaning because having a numerical spacing between pixels makes no sense. Therefore, the patentee has acted as his own lexicographer when using the phrase "digitally scanning." *Id.*

C. Review of Specification and File History

When reviewing the specification and file history of the '235 Patent, it is clear that the patentee has used the phrase "digitally scanning" to mean: "receiving image signals representative of a field of view from the objective lens of a microscope and converting the image signals into digital form" where "digital" means "expressed in numerical form." Upon reviewing the written description, one having ordinary skill in the art would understand the phrase to mean the same. For example:

> The focusing system is programmed to step through increments which detect/select only the high resolution center area of the field of view in order to avoid storing the fuzzy areas at the periphery of the field of view. (Column 11, Lines 18 – 22).

> "The optical image of the desired image area is then detected by optical array sensor 19 (preferably a CCD sensor array)." (Column 11, Lines 42 – 44).

"The optical array sensor sends electrical signals indicative of the detected image to microscope controlled computer 32." (Column 11, Lines 46 – 48).

"The signal produced by the optical sensors in the CCD grid are then transmitted to a computer which stores the image signals in a series of tiled images." (Column 5, Lines 51 – 53).

"Signals from the camera sensors and controller are supplied over a bus 128 to the image acquisition system where they are digitized and supplied to the PCI bus for storage in RAM or for backing storage on the hard disk 62." (Column 26, Lines 3 – 7).

Thus, upon a review of the written description, one having ordinary skill in the art would understand the phrase "digitally scanning" to mean: "receiving image signals representative of a field of view from the objective lens of a microscope and converting the image signals into digital form" where "digital" means "expressed in numerical form."

**B.    Claim 33 of the '235 Patent**

33. A method for viewing a portion of or an entire virtual microscope slide having a specimen representation comprised of sets of digitized image tiles, the method comprising:

providing an Internet or intranet communication channel;

providing one or more receivers connected to the Internet or intranet communication channel to receive <u>virtual microscope slides</u> for viewing;

storing one or more sets of virtual microscope digital slides at a first station connected to the Internet or intranet communication channel;

transmitting stored digital image tiles at a first resolution and magnification over the Internet or intranet communication channel to a receiver requesting a virtual microscope slide or a portion thereof; and

providing a display of a virtual microscope slide

formed from the transmitted set of digital image tiles as a composite reconstructed view

formed of selected contiguous image tiles at the first resolution and magnification of <u>the original optical image</u> and

providing a display of an overall view of an area of interest of the specimen representation at a lower resolution and magnification at the requesting receiver.

### 1. virtual microscope slides

The phrase "virtual microscope slide" should be construed to mean: "a data structure of images which can be used in place of the actual specimen slides" where the phrase "data structure of images" means "a collection of image tiles and their mapping coordinates" as set forth in detail above.

A. Dictionary

There is no relevant dictionary definition of the phrase **virtual microscope slides**. A combination of definitions is set forth below:

**virtual**: "1. Existing or resulting in essence or effect though not in actual fact, form, or name: the virtual extinction of the buffalo; 2. Existing in the mind, especially as a product of the imagination. Used in literary criticism of a text; 3. *Computer Science* Created, simulated, or carried on by means of a computer or computer network: virtual conversations in a chatroom.

*Usage Note*: When virtual was first introduced in the computational sense, it applied to things simulated by the computer, like virtual memory—that is, memory that is not actually built into the processor. Over time, though, the adjective has been applied to things that really exist and are created or carried on by means of computers. Virtual conversations are conversations that take place over computer networks, and virtual communities are genuine social groups that assemble around the use of e-mail, webpages, and other networked resources. The adjectives virtual and digital and the prefixes e- and cyber- are all used in various ways to denote things, activities, and organizations that are realized or carried out chiefly in an electronic medium. There is considerable overlap in the use of these items: people may speak either of virtual communities or of cybercommunities and of e-cash or cybercash. To a certain extent the choice of one or another of these is a matter of use or convention (or in some cases, of finding an unregistered brand name). But there are certain tendencies. Digital is the most comprehensive of the words, and can be used for almost any device or activity that makes use of or is based on computer technology, such as a digital camera or a digital network. Virtual tends to be used in reference to things that mimic their "real" equivalents. Thus a digital library would be simply a library that involves information technology, whether a brick-and-mortar library equipped with networked computers or a library that exists exclusively in electronic form, whereas a virtual library could only be the latter of these. The prefix e- is generally preferred when speaking of the commercial applications of the the Web, as in e-commerce, e-cash, and e-business, whereas cyber- tends to be used when

speaking of the computer or of networks from a broader cultural point of view, as in cybersex, cyberchurch, and cyberspace. But like everything else in this field, such usages are evolving rapidly, and it would be rash to try to predict how these expressions will be used in the future." (Am. Heritage, emphasis added).

microscope: "1. An optical instrument that uses a lens or a combination of lenses to produce magnified images of small objects, especially of objects too small to be seen by the unaided eye." (Am. Heritage).

slides: "6. A small glass plate for mounting specimens to be examined under a microscope." (Am. Heritage).

B. Context in Claim

The preamble of claim 33 talks about viewing a virtual microscope slide having a specimen representation comprised of sets of image tiles. The body of the claim talks about requesting a virtual microscope slide, receiving a virtual microscope slide, and providing a display of a virtual microscope slide. This context in which the phrase is used departs from any ordinary meaning applied by concatenating the dictionary definitions of the various words. In this case, the meaning of the whole phrase is different from the sum of its parts.

C. Review of Specification and File History

The specification and file history of the '235 Patent defines the meaning of virtual microscope slide. The patentee has acted as his own lexicographer and provided a very specific definition of the phrase. That definition is set forth in the following passages:

"The fact that a typical microscope specimen slide contains only limited information of interest and the ability of the system embodying the invention to accurately locate such regions enables the system to create a virtual microscope slide, i.e. a data structure which can be used in place of the actual specimen slides." (Column 6, Lines 42 – 47).

"FIG. 18 is a block diagram of a remote networked system for distributing and accessing diagnostic images and data, i.e. virtual microscope slides" (Column 10, Lines 48 – 50).

"a virtual microscope slide, i.e. interrelated data structures and display procedures depicting at multiple resolutions, images of a specimen on a microscope slide" (Column 10, Lines 57 – 59).

The abbreviation "i.e." is of Latin origin and stands for "that is." (Am. Heritage). Accordingly, the patentee has defined the phrase "virtual microscope slides" in each of the above passages. Additional passages in the specification also support the patentees' definition:

"For exemplary purposes, the creation of virtual microscope slide specimen according to the invention will be described with respect to a breast cancer specimen. The first step in creating a data structure according to the invention is to establish a macro image of the entire specimen" (Column 11, Lines 1 – 5).

Here, the phrase "data structure" is used by the patentee interchangeably with the phrase "virtual microscope slide."

"By compressing the .bmp images to .jpg and adding a dynamic, self-executing program which enables the user to view, reconstruct and manipulate the image tiles, the user can use the data structure as a virtual microscope slide of the original specimen." (Column 19, Lines 10 – 14).

Here, once again, the phrase "data structure" is used by the patentee interchangeably with the phrase "virtual microscope slide." Upon a review of the written description, one having ordinary skill in the art would understand the definition of "virtual microscope slide" to be a data structure of images which can be used in place of the actual specimen slides, where the phrase data structure of images means a collection of image tiles and their mapping coordinates as set forth in detail above.

## D. Bacus' Proposed Construction Fails

The proposed construction by plaintiff ignores the patentees' own definition of the phrase in the specification of the '235 Patent. Accordingly, Bacus' proposed construction of "virtual microscope slides" must fail.

## 2. the original optical image

The phrase "the original optical image" should be construed to mean: "the first image tile" where the phrase "image tile" means "an optical reproduction of a single field of view from the objective lens of a microscope, separately scanned and separately stored as a standard image file." as set forth in detail above.

## A. Dictionary

A relevant dictionary definition of the word **original** is: "1. Preceding all others in time; first." (Am. Heritage). A relevant dictionary definition of the word **optical** is: "1. Of or relating

to sight; visual: an optical defect; 2. Designed to assist sight: optical instruments; 3. Of or relating to optics; 4. Relating to or using visible light: optical astronomy; 5. Using light-sensitive devices." (Am. Heritage). The word **image** was defined above as: "2. *Physics* An optically formed duplicate, counterpart, or other representative reproduction of an object, especially an optical reproduction formed by a lens or mirror." (Am. Heritage).

B. Context in Claim

In the claim, the context of the phrase is that a composite reconstructed view is formed of selected image tiles at the first resolution and magnification of the original optical image. The only way the context of this claim language makes sense is if the composite reconstructed view is formed of selected image tiles that have the same resolution and magnification of the first image tile. This context does not depart from the ordinary meaning of the phrase.

C. Review of Specification and File History

The specification and file history of the '235 Patent consistently uses the phrase "optical image" to mean "image tile," or one "field of view" through the objective lens of the microscope. For example:

> "Today, it is impractical to construct an optical image sensor large enough to cover the entire image area e.g., of a specimen on a microscope slide, at the required resolution. This is because lens size and resolution/magnification issues limit the size of the field of view of magnified objects and their resulting images." (Column 1, Lines 20 – 25).

Here, the patentee uses "optical image" sensor interchangeably with "field of view." As set forth above, a "field of view" of the lens of the microscope is the optical reproduction that is separately scanned and separately stored in each individual image tile.

> "Since the nature of optics, i.e. lenses, is that they provide a generally circular image with a sharp central region and with fuzziness around the periphery of the image, the microscope system is designed to step through the various locations on the slide in such a manner to scan only the high resolution image portion in the center of the optical image." (Column 6, Lines 13 – 18).

Once again, the patentee uses the term "optical image" interchangeably with "field of view."

> "The optical image of the desired image area is then detected by optical image array sensor 19 (preferably a CCD sensor array). In this example, each of the 80 scanned areas is sensed by the entire array, which includes 752 pixels by 480 pixels." (Column 11, Lines 41 – 46).

"This means each of the 80 image segments will be scanned separately and stored as a separate image tile." (Column 11, Lines 28 – 30).

These citations are not merely descriptions of a preferred embodiment but instead are the words chosen by the patentee to describe the actual invention itself. The patentee suggests no alternatives and clearly uses the phrase in the context of its ordinary meaning throughout the specification. Accordingly, after a review of the written description, one having ordinary skill in the art would understand the phrase to mean "the first image tile."

### C.  Claim 59 of the '235 Patent

59. A method of viewing of high resolution images from a specimen on a microscope slide comprising:

     providing a medium with digitally stored images of contiguous fields of view of an area of interest larger then several <u>contiguous fields of view;</u>

     providing high resolution images stored at a digital spacing between adjacent pixels in a specimen image plane being greater than the microscope objective lens optical resolution spacing to preserve the optical resolution for a reconstructed high resolution composite image;

     providing <u>edge alignment data</u> for spatial reconstruction of contiguous fields of view into a reconstructed composite image larger than several contiguous fields of view; and

     using a control program for viewing, manipulating and <u>reconstructing contiguous images</u> to form the reconstructed composite views with the preserved high resolution.

#### 1.  <u>contiguous fields of view</u>

The phrase "contiguous fields of view" should be construed to mean: "adjoining regions that can be seen through the lens of an optical instrument."

A. <u>Dictionary</u>

A relevant dictionary definition of the word <u>contiguous</u> is: "1. Sharing an edge or boundary; touching." (Am. Heritage). A relevant dictionary definition of the phrase <u>field of view</u> (as part of the definition of the word "field") is: "8. The usually circular area in which the image is rendered by the lens system of an optical instrument. Also called field of view." (Am. Heritage).

**B. Context in Claim**

The context in which this phrase is used in the claim is that there is a medium (e.g., hard disk drive) with digitally stored images of contiguous fields of view on it. These images are of an area of interest that is larger than several contiguous fields of view. Also, there is edge alignment data (X-Y coordinate values) that are used to reconstruct the contiguous fields of view into a reconstructed composite image that is also larger than several contiguous fields of view.

**C. Review of Specification and File History**

When reviewing the specification and file history of the '235 Patent, it is clear that the patentee has used the phrase "contiguous fields of view" in a manner that is consistent with its ordinary meaning. For example:

> Today, it is impractical to construct an optical image sensor large enough to cover the entire image area e.g., of a specimen on a microscope slide, at the required resolution. This is because lens size and resolution/magnification issues limit the size of the field of view of magnified objects and their resulting images. Viewing through a microscope is akin to viewing through a periscope in that one sees a very small field of view even at low magnifications, such as 1.25 times. (Column 1, Lines 21 – 26).

> However, the preferred embodiment of this invention provides a marker on the overall macro view showing the remote user where the higher resolution image is located on the specimen so that the user does not have to remember the location of the higher resolution image. Unlike the single, small optical field of view currently available, the remote user is provided with a series of abutted, tiled images each being substantially equal to one small optical field of view. Thus, the remote user is provided with better and larger macro and micro tiled images than the single, small optical fields of view taken at the same magnifications of a single tiled image. (Column 4, Lines 46 – 57).

> The user can move the mouse or pointing device and the image in the smaller window will scroll with the selection on the thumbnail view. In this way, the program simulates movement of a microscope slide under the field of view of the mechanical microscope. (Column 9, Lines 27 – 31).

> The focusing system is programmed to step through increments which detect/select only the high resolution center area of the field of view in order to avoid storing the fuzzy areas at the periphery of the field of view. In this example, the macro image will be stored in a 10 by 8 array, for a total of 80 contiguous image tiles, as shown in FIG. 1A. (Column 11, Lines 18 – 24).

> The X-Y coordinate information is used by the viewing and manipulation program to reconstruct the image tiles into a complete image of the specimen. The

resulting image is larger, and with better resolution than would be achieved if optics technology were able to construct a single lens capable of viewing the entire specimen in one field of view. (Column 12, Lines 7 – 13).

Accordingly, upon a review of the written description, one having ordinary skill in the art would understand the phrase "contiguous fields of view" to have its ordinary meaning, which is "adjoining regions that can be seen through the lens of an optical instrument."

2.    **edge alignment data**

The phrase "edge alignment data" should be construed to mean: "information in a form suitable for processing by a computer to produce a proper orientation of the intersection between two surfaces."

A. Dictionary

A relevant dictionary definition of the word **edge** is: "3. a. The line of intersection of two surfaces: the edge of a brick; the table's rounded edges." (Am. Heritage). A relevant dictionary definition of the word **align** is: "2. To adjust (parts of a mechanism, for example) to produce a proper relationship or orientation: aligning the wheels of a truck." (Am. Heritage) and a relevant dictionary definition of the word **data** is: "2. *Computer Science* Numerical or other information represented in a form suitable for processing by computer." (Am. Heritage).

B. Context in Claim

The use of the phrase in the context of the claim is such that the "edge alignment data" is provided for spatial reconstruction of contiguous fields of view. The contiguous nature of the fields of view is congruent with the ordinary meaning of edge because contiguous fields of view share a line of intersection. This context is not a departure from the ordinary meaning.

C. Review of Specification and File History

The specification and file history of the '235 Patent do not contain a single use of the phrase "edge alignment data." Accordingly, upon a review of the written description, one having ordinary skill in the art would understand the phrase to have its ordinary meaning, which is: "information in a form suitable for processing by a computer to produce a proper orientation of the intersection between two surfaces."

### 3.    reconstructing contiguous images

The phrase "reconstructing contiguous images" should be construed to mean: "aligning adjoining image tiles on the display screen of a computer monitor," where "aligning" means orienting the image tiles according to their predetermined electromechanical points on the microscope stage where each point is assigned an (X, Y) coordinate value that uniquely defines its location."

A. Dictionary

A relevant dictionary definition of the word reconstructing is: "1. To construct again; rebuild." (Am. Heritage). A relevant dictionary definition of the word contiguous is: "1. Sharing an edge or boundary; touching." (Am. Heritage). A relevant dictionary definition of the word image is: "2. *Physics* An optically formed duplicate, counterpart, or other representative reproduction of an object, especially an optical reproduction formed by a lens or mirror." (Am. Heritage). A relevant dictionary definition of the word aligning is: "1. To adhere to a prescribed course of action; 2. To move or be adjusted into proper relationship or orientation." (Am. Heritage).

B. Context in Claim

In the claim, the phrase is used in the context of reconstructing contiguous images by using a control program and edge alignment data. Previously in the claim, the providing step requires that the digitally stored images are of contiguous fields of view. Thus, the context of reconstructing contiguous images is the same as reconstructing contiguous fields of view, since an image is the same as a field of view according to the claim. This context does not deviate from the ordinary meaning according to the dictionary definitions.

C. Review of Specification and File History

When reviewing the specification and file history of the '235 Patent, one having skill in the art would understand that the phrase "reconstructing contiguous images" means aligning adjoining image tiles on the display screen of a computer monitor according to their predetermined electromechanical points on the microscope stage where each point is assigned an (X, Y) coordinate value that uniquely defines its location. This meaning is clear from the patentees use of the phrase throughout the description of the invention. The specification is so uniformly consistent in its use of the phrase that it has imbued the phrase with the definition. For example:

"Since the size of the macro image tile 288 is known, the next macro image tile 292 may be placed contiguous with it by moving the stage appropriately and by measuring the location of the stage from the stage in counters without the necessity of performing any image manipulation. The image tiles 288 and 292 may be abutted without any substantial overlap or they may be overlapped slightly, such as a one pixel with overlap, which is negligible insofar as blurring of any adjacent edges of abutted image tiles." (Column 27, Lines 51 – 59).

Since the X-Y coordinates are known for each image tile, and thus for each pixel in each tile, the bitmap can be used to coordinate and display the stored image tiles to present a fused macro view of the image with one-to-one pixel correspondence of the screen pixels with the image pixels. (Column 5, Lines 62 – 67).

Further, since the physical X,Y position on the specimen is known through the stage coordinate relationship to the image pixels, the tiled macro images can be used to locate regions, and move the stage to that region from collection of higher magnification tiled images. (Column 6, Lines 7 – 12).

Accordingly, upon a review of the written description, one having skill in the art would understand that the phrase "reconstructing contiguous images" to mean aligning adjoining image tiles on the display screen of a computer monitor according to their predetermined electromechanical points on the microscope stage where each point is assigned an (X, Y) coordinate value that uniquely defines its location.

## IV.    Claim Construction for Patent Number 6,522,774

### A.    Claim 1 of the '774 Patent

1. A data structure of images taken from a specimen on a microscope slide comprising:

a series of contiguous, multiple images at a first magnification stored and useable to create an overall view of several adjacent, original microscope images assembled together;

the multiple images taken from at least a portion of a specimen on the slide; and

the series of images providing a magnified image of the slide specimen to a viewer.

### 1.    original microscope images

The phrase "original microscope images" should be construed to mean: "the first image tiles," where the phrase "image tile" means "an optical reproduction of a single field of view

from the objective lens of a microscope, separately scanned and separately stored as a standard image file." as set forth in detail above.

A. Dictionary

A relevant dictionary definition of the word **original** is: "1. Preceding all others in time; first." (Am. Heritage). A relevant dictionary definition of the word **microscope** is: "1. An optical instrument that uses a lens or a combination of lenses to produce magnified images of small objects, especially of objects too small to be seen by the unaided eye." (Am. Heritage). The word **image** was defined above as: "2. *Physics* An optically formed duplicate, counterpart, or other representative reproduction of an object, especially an optical reproduction formed by a lens or mirror." (Am. Heritage).

B. Context in Claim

In the claim, the phrase is used in a context where several adjacent original microscope images are assembled together to create an overall view. According to the claim, the original microscope images are part of a data structure of images that were taken from a specimen on a microscope slide. Because they are microscope images, the context suggests that they were taken through the objective lens of a microscope, which is congruent with the ordinary meaning of the word image. Thus, the context of the phrase in the claim does not deviate from the ordinary meaning of the phrase.

C. Review of Specification and File History

The specification and file history of the '235 Patent echo the ordinary meaning of the phrase. The specification teaches that image tiles are captured through the objective lens of a microscope and the objective lens has a field of view. The specification also teaches that the image tiles are stored in a data structure with X-Y coordinate values, as set forth above. Moreover, the specification teaches that the image tiles are captured at low magnification to allow the creation of an overall view, or "macro" image. For example:

> "Then the microscope system is used to digitally scan the image. The first scan is done at a relatively small magnification since this image will be used to provide a "macro" image of the entire specimen. In the preferred embodiment, 1.25x magnification is used. The microscope system then scans the slide using the 1.25x objective. Since the image is detected by rectangular optical sensors, such as the optical sensors in a CCD grid, the stage must be moved in relatively larger increments to place the next adjacent physical part of the slide exactly in the region where that rectangular area will be precisely imaged on the CCD sensor." (Column 5, Lines 33 – 39).

> "Since the nature of optics, i.e. lenses, is that they provide a generally circular image with a sharp central region and with fuzziness around the periphery of the image, the microscope system is designed to step through the various locations on the slide in such a manner to scan only the high resolution image portion in the center of the optical image." (Column 6, Lines 13 – 18).

Upon a review of the written description, one having skill in the art would understand the phrase "original microscope images" to mean the first image tiles. The ordinary meaning of "original microscope images" agrees with the proffered construction and the patentee has not acted as his own lexicographer to define the phrase to mean anything different and the context in which the phrase is used in the claim does not depart from the ordinary meaning.

### 2. a viewer

The term "viewer" should be construed to mean: "one that views."

#### A. Dictionary

A relevant dictionary definition of the word viewer is: "1. One that views, especially an onlooker or spectator; 2. Any of various optical devices used to facilitate the viewing of photographic transparencies by illuminating or magnifying them; 3. A person who watches television or movies: viewers of prime-time shows; viewers of action movies." (Am. Heritage).

#### B. Context in Claim

In claim 1, the term "viewer" is used in the context that he is provided an image of the slide specimen. This context does not depart from the ordinary meaning of the term.

#### C. Review of Specification and File History

The specification and file history of the '774 Patent consistently use the term "viewer" to mean a human being. For example:

> "The purpose for creating the macro or large area thumbnail image is to enable the viewer to see the entire specimen at once" (Column 11, Lines 7 – 9).

Here, the patentee describes the viewer as having the human ability to see.

> "Since the stored image data is usually greater than the size of the typical monitor, the viewer must scroll through the image on the window to view it entirely." (Column 12, Lines 3 – 6).

Here, the patentee describes the viewer as having to scroll through the image on the window to view it entirely. This is an action that only a human being can perform, and "view it entirely"

once again implies that the viewer can see. These citations support the ordinary meaning of the term and the specification does not contain any alternative definition of the term and does not disclaim that "viewer" means one that views. Accordingly, upon a review of the written description one having ordinary skill in the art would understand the word "viewer" to have its ordinary meaning, which is one that views.

**B.** **Claim 14 of the '774 Patent**

14. A storage medium having digitized images of a specimen on a microscope slide comprising:

a storage medium;

a series of contiguous, multiple images at a first magnification stored and useable to create an overall view of several adjacent, original microscope images assembled together;

the first series of multiple images taken from at least a portion of a specimen on the slide;

mapping coordinates for assembling the series of contiguous, multiple images stored on the storage medium; and

the mapping coordinates and the series of images providing a magnified image of the slide specimen to a viewer.

**1.** **mapping coordinates**

The phrase "mapping coordinates" should be construed to mean: "corresponding numbers used to determine the position of an object with respect to a fixed reference," where the fixed reference is the microscope stage.

A. Dictionary

A relevant dictionary definition of the word **map** is: "2. *Mathematics* The correspondence of elements in one set to elements in the same set or another set." (Am. Heritage). A relevant dictionary definition of the word **coordinates** is: "3. *Mathematics* Any of a set of two or more numbers used to determine the position of a point, line, curve, or plane in a space of a given dimension with respect to a system of lines or other fixed references." (Am. Heritage).

B. Context in Claim

In claim 14, the phrase is used in the context of mapping coordinates for assembling the series of contiguous, multiple images stored on the storage medium. This use does not depart from the ordinary meaning of the phrase.

C. Review of Specification and File History

The specification and file history of the '774 Patent consistently use the phrase "mapping coordinates" to mean the X-Y values (numbers) that are used to position an image tile with respect to the fixed system of lines on the microscope stage. For example:

> "The system includes a microscope and stage in which digital locations on the stage have been predetermined in accordance with an electromechanical addressable coordinate system (X-Y for convenience). Each point on the stage is assigned an "X" and a "Y" coordinate which uniquely defines its location." (Column 5, Lines 13 – 17).

> "The signal produced by the optical sensors in the CCD grid are then transmitted to a computer which stores the image signals in a series of tiled images. Since each image frame is defined by predetermined X-Y coordinates, these can be easily converted into a series of contiguous tiled images." (Column 5, Lines 51 – 56).

> "The optical array sensor sends electrical signals indicative of the detected image to microscope controlled computer 32. Computer 32 stores the scanned images, including the top left X-Y stage coordinates for each of the 80 individual areas of the microscope slide." (Column 11, Lines 46 – 50).

Thus, the phrase "mapping coordinates" should be construed to mean "corresponding numbers used to determine the position of an object with respect to a fixed reference," which is consistent with its ordinary meaning and the way the phrase is used in the specification. Here, the object whose position is determined is an image tile and the fixed reference to which it is oriented is the microscope stage. Upon a review of the claim, the context of the use of the phrase in the claim, and the written description, one having ordinary skill in the art would understand the phrase to mean "corresponding numbers used to determine the position of an object with respect to a fixed reference" where the fixed reference is the microscope stage.

## V.    Claim Construction for Patent Number 6,396,941

### A.    Claim 1 of the '941 Patent

1. A method for viewing virtual microscope slides comprised of sets of digitized tiled images over a common communication channel, the method comprising:

provilding a transmitting station connected to the common communication channel and accessible by a number of remote receiving stations connected to the common communication channel;

storing a plurality of sets of virtual microscope, digitized slide images at the transmitting station;

transmitting <u>control information</u> to the requesting computer for use in aligning the transmitted sets of digitized tiled images to form a composite, coherent, seamless digitized, virtual microscope, slide image from a set of digitized tiled images;

displaying on a viewer at a remote receiving station a thumbnail view of a specimen or portion thereof on the virtual microscope slide;

displaying on the viewer at the remote receiving station an aligned set of digitized tiled images at a higher resolution than the resolution of the thumbnail view; and

zooming by the viewer back and forth between the thumbnail view and the higher resolution set of digitized tiled images.

### 1.    control information

The phrase "control information" should be construed to mean: "transmitted data for use in measuring the alignment of image tiles, " where the word "data" means: "the top left X-Y stage coordinates for a separately scanned and separately stored image tile."

A. Dictionary

A relevant dictionary definition of the word <u>control</u> is "1. Authority or ability to manage or direct: lost control of the skidding car; the leaders in control of the country; 2. a. One that controls; a controlling agent, device, or organization; b. An instrument or set of instruments used to operate, regulate, or guide a machine or vehicle. Often used in the plural; 3. A restraining device, measure, or limit; a curb: a control on prices; price controls; 4. a. A standard of

comparison for checking or verifying the results of an experiment; b. An individual or group used as a standard of comparison in a control experiment; 5. An intelligence agent who supervises or instructs another agent; 6. A spirit presumed to speak or act through a medium." (Am. Heritage).

A relevant dictionary definition of the word **information** is "3. A collection of facts or data: statistical information; ... 5. *Computer Science* Processed, stored, or transmitted data." (Am. Heritage).

B. Context in Claim

In the claim the phrase "control information" is used in the context of transmitting control information to the requesting computer for use in aligning the transmitted sets of tiled images. This demonstrates that the definition of *transmitted data* for the word information does not depart from the context of the claim. Furthermore, because the information is used to align the image tiles, a definition of *measuring or limiting* for the word control also does not depart from the context of the claim since the control information is used to align the image tiles.

C. Review of Specification and File History

A review of the specification reveals that the patentee did not use the phrase "control information" anywhere in the written description. The phrase only appears in the claims. However, one skilled in the art, after reviewing the written description, would understand that the "control information" is the X-Y coordinate values of the top left corner of each separately scanned and separately stored image tile. For example:

> "The computer 32 stores the scanned images, including the top left X-Y stage coordinates for each of the 80 individual areas of the microscope slide." (Column 6, Lines 4 – 7).

> "The X-Y coordinate information is used by the viewing and manipulation program to reconstruct the image tiles into a complete image of the specimen." (Column 6, Lines 33 – 35).

> "When the data structure is viewed by a control program, the program uses the X-Y coordinates to display all the image tiles contiguously." (Column 7, Lines 24 – 26).

Accordingly, after a review of these passages and the rest of the written description that further describes the control information as the X-Y coordinate values from the microscope stage that are recorded for each image tile, one having ordinary skill in the art would understand the plain

meaning of the phrase "control information" to be "transmitted data for use in measuring the alignment of image tiles, " where the word "data" means: "the top left X-Y stage coordinates for a separately scanned and separately stored image tile."

## B.    Claim 2 of the '941 Patent

2. A method in accordance with claim 1 further comprising:

providing a plurality of digitized tiled images each at a different resolution and each a higher resolution than the thumbnail view; and

zooming back and forth between the plurality of higher resolution images as well as with the thumbnail image.

### 1.    zooming

The term "zooming" should be construed to mean: "causing graphics in a window or frame to appear larger on the screen."

A. Dictionary

A relevant dictionary definition of the term zoom is: "5. *Computer Science* To cause text or other graphics in a window or frame to appear larger on the screen." (Am. Heritage).

B. Context in Claim

The context that the term is used in the claim is that someone is zooming back and forth between the plurality of higher resolution images as well as with the thumbnail image. This context agrees with the ordinary meaning of the term because the user is causing the window displaying the higher resolution images to alternatively show lower and then relatively higher magnification image tiles.

C. Review of Specification and File History

When reviewing the specification and file history of the '235 Patent, there is not clear disavowal of the ordinary meaning of the term "zooming." There are scant uses of the term in the specification, but where it is used, it is clear that the meaning of the term is to make the image in the window appear relatively larger. For example:

"This same, or an analogous method of filling in tiles for display images is used in scrolling, zooming in and out, and in retrieving tiles for the Field View window

(coming from the Slide View window), and in retrieving image tiles from the server for the fixed size Java applet viewer." (Column 36, Lines 20 – 26).

"So the virtual slide advantage of scrolling and zooming in and out are available but in a limited size window." (Column 36, Lines 45 – 47).

Accordingly, upon a review of the written description, one having ordinary skill in the art would understand the term "zooming" to mean "causing graphics in a window or frame to appear larger on the screen."

## C.    Claim 64 of the '941 Patent

64. A method of using a filing structure for organizing virtual microscope slide images to be requested by and transmitted to a requester from a server at a server station over a common carrier, comprising:

transmitting a request from a requester at requesting station to the server station;

transmitting a slide tray request to the server station;

transmitting slide tray information from the server station to the requesting station;

displaying to the requester slide tray information comprising a list of virtual microscope slide names on a display device at the requesting station;

selecting from the slide tray information a microscope slide name to cause an image request for the selected slide to be sent to the server station; and

transmitting from the server station a set of tiled digitized images comprising the slide specimen or a portion thereof for viewing on the display device at the requesting station.

### 1.    slide tray information

The phrase "slide tray information" should be construed to mean: "folder names and file names of images with a corresponding URL path extension."

A. Dictionary

A relevant dictionary definition of the word slide is: "6. A small glass plate for mounting specimens to be examined under a microscope." (Am. Heritage). A relevant dictionary definition of the word tray is: "1. A shallow flat receptacle with a raised edge or rim, used for carrying, holding, or displaying articles; 2. A shallow flat receptacle with its contents: *took the*

This last citation is clearly not just a description of a preferred embodiment. This quote differentiates the claimed slide tray information from a standard file structure. Accordingly, the patentee has clearly disavowed any construction of the phrase that would include a standard file structure. The words used by the patentee in this passage express a manifest exclusion of any construction that may include a standard file structure.

Furthermore, the context of the claim provides insight to the definition of the phrase. The context of the claim demonstrates that slide tray information includes a list of virtual microscope slide names. Thus, upon a review of the written description one having skill in the art would understand the phrase "slide tray information" to mean folder names and file names of images with a corresponding URL path extension.

## VI. Conclusion

As set forth above, Defendants assert that the intrinsic evidence resolves and supports the proffered construction of the disputed claim language. However, Defendants reserve the right to supplement its proposed claim construction or submit extrinsic evidence if the Court determines that consideration of such evidence is warranted.

Respectfully submitted,

Dated: July 23, 2004

Anthony J. Dain (Pro Hac Vice)
Pattric J. Rawlins (Pro Hac Vice)
Procopio, Cory, Hargreaves & Savitch LLP
530 B Street, Suite 2100
San Diego, California 92101-4469
Telephone:(619) 238-1900

Robert A. Carson
Shannon L. Clark
Gould & Ratner
222 North LaSalle Street, Eighth Floor
Chicago, Illinois 60601
Telephone:(312) 236-3003

*Attorneys for Defendants*
*Aperio Technologies, Inc.*
*Dakocytomation California, Inc.*

*SEE CASE*

*FILE FOR*

*EXHIBITS*