IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
AUG 13 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Bacus Laboratories, Inc., | |
| Plaintiff, | Docket Number: 02 C 9073 |
| v. | Assigned Judge: Judge Kennelly |
| Aperio Technologies, Inc., and Dakocytomation California, Inc., d/b/a Dako Corporation, | |
| Defendants. | |

**DOCKETED**
AUG 16 2004

### NOTICE OF FILING

TO: Karl R. Fink
FITCH, EVEN, TABIN & FLANNERY
Suite 1600
120 South LaSalle Street
Chicago, IL 60603-3406

PLEASE TAKE NOTICE that on the 13th day of August, 2004, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, IL 60601, Defendants' Sur-Rebuttal to Plaintiff's Proposed Claim Construction, on behalf of Dakocytomation California, Inc., d/b/a Dako Corporation and Irell & Manella LLP, a copy of which is attached hereto and herewith served upon you.

APERIO TECHNOLOGIES, INC. and
DAKO CORPORATION

By: _Shannon L. Clark_
One of its attorneys

Anthony J. Dain (Pro Hac Vice)
Pattric J. Rawlins (Pro Hac Vice)
Procopio, Cory, Hargreaves & Savitch LLP
530 B Street, Suite 2100
San Diego, California 92101-4469
Telephone: (619) 238-1900
Facsimile: (619) 235-0398

Robert A. Carson
Shannon L. Clark
GOULD & RATNER
222 North LaSalle Street, Eighth Floor
Chicago, IL 60601
Telephone: (312) 236-3003
Facsimile: (312) 236-3241

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bacus Laboratories, Inc., <br><br> Plaintiff <br><br> v. <br><br> Aperio Technologies, Inc., and Dakocytomation California, Inc. d/b/a Dako Corporation, <br><br> Defendants | Civil Action No. 02 CV 9073 <br> Consolidated with No. 03 CV 2252 <br><br><br> Honorable Matthew F. Kennelly <br> Magistrate Judge Ian H. Levin |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of each of the following documents was served on counsel for plaintiff Bacus Laboratories, Inc. in the matter set forth below, this 13th day of August, 2004.

(1) DEFENDANT'S SUR-REBUTTAL TO PLAINTIFF'S PROPOSED CLAIM CONSTRUCTION

*Via Electronic Mail*
Nicholas Peters, Esq.
FITCH, EVEN, TABIN & FLANNERY
120 South La Salle Street, Suite 1600
Chicago, IL 60603-3406
Telephone (312) 577-7000

_____
Attorney for Defendants, Aperio Technologies, Inc. and Dakocytomation California, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Bacus Laboratories, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Aperio Technologies, Inc., et al., <br><br> Defendants | Civil Action No. 02 CV 9073 <br> Consolidated with No. 03 CV 2352 <br><br> **DEFENDANTS' SUR-REBUTTAL TO PLAINTIFF'S PROPOSED CLAIM CONSTRUCTION** <br><br> Honorable Matthew F. Kennelly <br> Magistrate Judge Ian H. Levin |

FILED AUG 13 2004 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

DOCKETED AUG 16 2004

**DEFENDANTS' SUR-REBUTTAL TO PLAINTIFF'S PROPOSED CLAIM CONSTRUCTION**

I.  **Plaintiff's proposed construction of "image tiles" in the '235 Patent fails.**

Plaintiff continues to argue that an image tile is any "sub-section or part of an image" where "image" means "optical representation." This assertion is made notwithstanding Plaintiff's knowledge that such a broad construction was clearly surrendered during the prosecution history of the '235 Patent, and is also unsupported by the specification.

Plaintiff's definition of an image tile as any "sub-section or part of an image" is so absurdly broad that a single pixel would meet the definition, as would two pixels and so forth, including at the other extreme an image of unlimited size, without regard to how the image was captured in the first place. The prosecution history shows that the patentees' invention is dramatically limited by prior art that clearly articulates the creation and sharing of large digital images by breaking them down into smaller, more manageable images. These limitations of the scope of the Plaintiff's patents necessitate a definition that is consistent with, and defined by, the capabilities of the slide scanning system used to create the image tiles described by the patentees.

Plaintiff claims that its proposed construction of the phrase "image tiles" is consistent with the patentees' use of the phrase and disingenuously asserts that there is no clear disavowal of claim scope within the prosecution history.[1] However, the following passage from the '235 file history cited by Plaintiff[2] with respect to "contiguous fields of view" is directly to the contrary. In the cited passage, Plaintiff vigorously argues that its image tiling system is the exact

---

[1] See Plaintiff's Proffered Construction of Disputed Terms of the Claims in Issue In This Action ("Plaintiff's Construction"), at p. 12.
[2] See Plaintiff's Construction, Exhibit 13.

opposite of the cited prior art system, which teaches breaking down a large image into sub-sections. Specifically, Plaintiff states:

> "Ishibashi et al. starts from one large stored image of original information 24 level 0 and simply breaks it down into smaller areas such as an intermediate image 25, level 1 and a global image, level 2 (FIG. 8). This breaking down of one large stored image teaches nothing about how to create one large image from a series of contiguous smaller images. It is the opposite problem." (Amendment B, page 18, emphasis in original).

Plaintiff clearly limits the scope of the invention to a method for how to create a large image from a series of contiguous smaller images. Thus, the construction of "image tile" cannot be any "sub-section or part of an image" as urged by Plaintiff because that would contradict the patentees' own statements in the prosecution history. The patentees have, in the very passage cited to support its construction, demonstrated that Plaintiff restricted the meaning of the phrase "image tiles" and surrendered any broader construction of the phrase by arguing that an "image tile" is different from a small area of a large image.

Plaintiff further states in the cited passage:

> "Ishibashi 4,742,558 is directed to the exact opposite of that being done in that the original information image of Ishibashi is too large to be displayed whereas the original image tiles are displayed in this invention. Moreover, these original image tiles of this invention are combined to display even a larger area than a single original information tile image. This is the exact opposite of Ishibashi. Because Ishibashi's original information image is too large to be displayed, Ishibashi breaks down the large image area recorded by the camera by averaging luminescence data. That is, Ishibashi is concerned with how to break down a large area rather than how to create one large image from a series of aerial camera informations. There is no edge alignment of contiguous tiles taken at high resolution and assembled edge-to-edge to give the original high resolution for the composite image as in the present invention." (Amendment B, page 17, emphasis in original).

By pressing these arguments to differentiate its image tiling system from the Ishibashi reference, Plaintiff surrendered any construction of the phrase "image tiles" that would include "breaking down a large area" as taught by Ishibashi and differentiated by Plaintiff.

Plaintiff argued that the sub-sections of "a large area" that are "broken down" as taught by Ishibashi are different than the claimed "image tiles." Accordingly, Plaintiff's proposed construction of "image tiles" to mean a "sub-section or part of an image" is inconsistent with

Plaintiff's arguments in favor of patentability. Plaintiff specifically and unambiguously differentiated the claimed invention over the Ishibashi reference and cannot now, in good faith, suggest that the phrase "image tile" means something that was disclaimed when Plaintiff argued in favor of patentability.

The teachings of Ishibashi that Plaintiff fervently argued are different from its image tiling system, very clearly show an image that is broken down into sub-sections. Plaintiff's suggestion now that these sub-sections are identical to the image tiles of its system is an inappropriate attempt to broaden the scope of its invention through claim construction. For example, see Figure 9 of Ishibashi and its corresponding description, which the cited passages of Amendment B in the file history successfully differentiated:



FIG. 9

"FIG. 9 is a representation for explaining retrieval and display of the image stored in the hierarchical structure. It is impossible to simultaneously display all image information blocks with the number of pixels of level 0. First, a global image (highest level image) 26 is displayed on the display unit, as indicated by an illustration 29. Second, an intermediate image 25 of a designated area 30 is displayed on the display unit, as indicated by an illustration 31. Finally, a local image 24 of a designated area 32 is displayed on the display unit, as indicated by an illustration 33. The original image is exemplified by an image such as an aerophotograph covering a wide area. However, the present invention can also be applied to a case wherein independent local images constituting a global image can be selectively extracted." (Ishibashi, Column 10, Line 58 – Column 11, Line 5).

The passage illustrates and describes a "sub-section or part of an image" where the "image" is an optical representation (aerial photograph), supporting Defendants' argument that Plaintiff's proposed construction is overly broad. For example, sub-section 33 (enumerated as sub-section 133 in the figure) is a sub-section of the image 24. Additionally, sub-section 31 is a sub-section of the image 25 and sub-section 29 is a sub-section of the image 26.

Thus, Plaintiff's proposed construction is overbroad and fails. Plaintiff improperly attempts to recapture surrendered subject matter by arguing for a construction of the phrase

"image tiles" that is directly contrary to the arguments presented during the prosecution history in order to differentiate the claimed invention from prior art. Plaintiff's clashing positions (arguing for patentability in the file history and arguing for broad construction in the present suit) are, to use the words of Plaintiff, "the exact opposite."

Moreover, upon a review of the written description and file history, including the specific limitations authored by the patentees, one having ordinary skill in the art would understand the phrase "image tile" to mean "an optical reproduction of a single field of view from the objective lens of a microscope, separately scanned and separately stored as a standard image file."

Both parties' dictionary definitions with respect to the word "image" indicate that in the context of the claim, an image is an optical reproduction formed by a lens. The context of the claim, however, goes further and requires that the lens be an objective lens from a microscope. Accordingly, Defendants' proposed construction resonates with the agreed meaning of "image."

Plaintiff disagrees that the meaning of "image tiles" includes the limitation of the field of view. However, the dictionary definition of the word "field" provided by Defendants[3] with respect to "contiguous fields of view" demonstrates that the field of view is the area from which the image is rendered by the lens of an optical instrument. In the context of claim 1, there is a microscope (i.e., an optical instrument) that has an objective lens that is used to create an image (i.e., an image tile). Thus, according to the context of the claim, "an optical reproduction of a single field of view from the objective lens of a microscope," is the ordinary, dictionary meaning with respect to the word "image."

The context of the claim requires "digitally scanning and storing images from the specimen on a microscope slide to create a plurality of individual contiguous image tiles at a resolution finer than the optical resolution of the objective lens of the microscope." This context further demonstrates that image tiles are scanned through the objective lens of the microscope one image tile at a time, where each of the image tiles corresponds to a different area (field of view) of the specimen. Thus the context requires that a single image tile be rendered through the objective lens of the microscope. And when an image tile is rendered through the objective lens of an optical instrument such as a microscope, the image tile that is rendered, according to the dictionary definition, is from a single field of view.

---

[3] See Defendants' Proposed Claim Construction of Disputed Terms Of The Asserted Claims ("Defendants' Construction"), page 20.

## II. Plaintiff's limitation of the phrase "image tile" supports Defendants' construction.

The '235 Patent expressly incorporates by reference the specifications of the parent '265 Patent and the '930 Patent. Review of the claims for these patents shows that Plaintiff intends the phrase "image tile" to be limited to a field of view. For example, Claim 1 of the '265 Patent states in relevant part: "1. A method of using a computer controlled microscope imaging system for acquiring areas of interest in a specimen larger than a single field of view, said method comprising the steps of... automatically scanning the selected segment of the specimen *at the higher magnification to provide a plurality of spatially adjacent, single fields of view, higher magnification image tiles...*" (emphasis added).

Further, claim 4 of the '265 patent states in relevant part: "4. A method in accordance with claim 3 wherein... the high and low magnification images are each reconstructed *from image tiles each having a spatially known location stage coordinates from the microscope...*" (emphasis added). Therefore, an image tile cannot be an amorphous sub-section of an image as urged by Plaintiff, but is rather a well defined image that conforms to the boundaries of the field of view of the microscope lens and has a known location in relation to the microscope stage.

In short, review of the file history for the '235 Patent shows Plaintiff disavowed that its claimed image tiles are so broad as to include "a sub-section or part of an image." Rather, the record shows that Plaintiff argued that a system that teaches a sub-section of an image is the *opposite* of the claimed image tiling system. Plaintiff's consistent use in the specification of the '235 Patent and its parent patents of the phrase "field of view" as the atomic unit from which the entire image tiling based invention is derived demonstrates that the only construction of the phrase "image tile" that is reconcilable with the ordinary meaning, context of the claim, and record is: "an optical reproduction of a single field of view from the objective lens of a microscope, separately scanned and separately stored as a standard image file."

Respectfully submitted,

Dated: August 12, 2004

Anthony J. Dain (Pro Hac Vice)
Procopio, Cory, Hargreaves & Savitch LLP
530 B Street, Suite 2100
San Diego, California 92101-4469
Telephone:(619) 238-1900
*Attorneys for Defendants*