IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BACUS LABORATORIES, INC. | ) | Civil Action No. 02 CV 9073 |
| | ) | |
| Plaintiff, | ) | |
| | ) | The Honorable Matthew F. Kennelly |
| v. | ) | |
| | ) | Magistrate Judge Ian H. Levin |
| APERIO TECHNOLOGIES, INC. and | ) | |
| DAKOCYTOMATION CALIFORNIA, INC. d/b/a | ) | |
| DAKO CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |



DOCKETED
AUG 1 8 2004

**BACUS'S SURREPLY TO DEFENDANTS' PROPOSED CLAIM CONSTRUCTION**

FILED
AUG 1 8 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT



# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE PHRASE "IMAGE TILES" OF CLAIM 1 OF THE '235 PATENT . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE PHRASE "DIGITALLY SCANNING" IN CLAIM 1 OF THE '235 PATENT . . . . . . . . . . . . . . . . . . . 3

THE PHRASES "OVERALL MACRO VIEW" AND "OVERALL MACRO IMAGE"
IN CLAIM 3 OF THE '235 PATENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CLAIM 23 OF THE '235 PATENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

"MAPPING COORDINATES" OF CLAIM 14 OF THE '774 PATENT . . . . . . . . . . . . . . . . . . . . . . . . . 5

THE PHRASE "CONTROL INFORMATION" OF CLAIM 1 OF THE '941 PATENT . . . . . . . . . . . . . . . . . 5

I.  **INTRODUCTION**

Pursuant to the Court's August 5, 2004 order, Bacus submits this memorandum in reply to the Defendants' July 30, 2004 rebuttal brief regarding claim construction.[1]

The Defendants' rebuttal brief continues to repetitively argue for claim constructions that improperly rewrite the claim language in an unduly narrow manner with the intention of using such narrow constructions to avoid infringement. However, as discussed at length in Bacus' previous briefs, the Defendants' approach violates the basic rules of claim construction as spelled out in *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002). *See also Innova/Pure Water, Inc. v. Safari Water Filtrations Sys., Inc.*, No. 04-1097 at 15-16, 18 (Fed. Cir. Aug. 11, 2004) (copy attached). To save paper, Bacus will focus herein on new arguments found in Defendants' rebuttal brief.

II. **THE PHRASE "IMAGE TILES" OF CLAIM 1 OF THE '235 PATENT**

The Defendants argue that "each image tile is an individual image...not a subsection or part of any other image." (Defs.' Rebuttal at 5.) The Defendants' support their strained argument with the statement that "the phrase must have a plausible meaning when only the first image tile has been captured." (Defs.' Rebuttal at 5.) However, the claim at no point requires use of "only" a single tile, and instead calls for a composite image to be formed from contiguous image tiles. Further, the Defendants essentially admit that a tile can be both an image (an "image tile") and a part of a larger image (a "composite image") where they state, "[A]ny composite image necessarily requires at least two image tiles." (Defs.' Rebuttal at 5). The Defendants' own citation to the '235 specification ("This means each of the 80 **image segments** will be scanned separately and stored as a separate **image tile**.")(Defs.' Rebuttal at 6)(emphasis added) supports Bacus', rather than the Defendants',

---

[1] During the July 13, 2004 status hearing, it was agreed that claim construction briefs would be filed by July 23, 2004 unless the Defendants advised a week earlier that they would be filing a motion for deferral. Bacus was given one week to respond to any such motion for deferral. Neither the Court nor the parties discussed a schedule for filing responses to any claim construction briefs in the event that the parties filed them on July 23. Therefore, after the July 13, 2004 telephone status hearing, Bacus' counsel did not originally believe that response briefs regarding claim construction were authorized by the Court. However, in view of the ambiguous wording of the minute order which issued as a result of that hearing, and after seeing that Aperio had filed its "rebuttal" claim construction brief on Friday, July 30, 2004, Bacus filed its own "rebuttal" brief on Monday August 2, 2004. Thereafter, in its August 5, 2004 order, the Court authorized the filing of "surreply" briefs by August 13, 2004.

1

proposed construction. Even under the Defendants' approach of looking at the scanning of individual tiles, the claim requires each of the "image tiles" to be sub-sections or parts of a larger image because as soon as a second contiguous image tile is created, the first image tile is a part of the composite image formed by the two scanned contiguous image tiles and any subsequent scanned contiguous image tiles.

Defendants' reliance on *Texas Digital*, 308 F.3d at 1202-1203, and *Brookhill-Wilk I, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed.Cir. 2003), *reh'g en banc denied* (Fed.Cir. 2003), to argue that the Dictionary of Photography and Digital Imaging cannot be used for claim construction because it was published in 2002, which is after the 2001 issue date of the '235 patent, is misplaced. The opinion in *Texas Digital* did not purport to exclude reference to a dictionary that was written in the same year as the issue date and published within one year after the issue date. *Brookhill-Wilk* is distinguishable because the references in question were articles, not dictionaries, found on the Internet, and they were dated 5 and 8 years respectively after issuance of the patent in question. Dictionaries reflect prevailing meanings based on past experience and therefore are inherently retrospective. Here, it makes sense to consult a dictionary that reflects an understanding that clearly was prevailing at the time the '235 patent issued.

The construction of the phrase "image tiles" as "sub-sections or parts of an image" is supported by the prosecution history of the '235 patent as well as the specification of the '235 patent. One reference relied upon by the Patent Office in the prosecution history[2], U.S. Patent No. 4,742,558 (hereinafter "the Ishibashi patent"), was directed at the problem of handling a large image data set. A distinction between the disclosure of the Ishibashi patent and claim 1 of the '235 patent is how the parts or image tiles of a larger image are created and used. In explaining this distinction, Bacus stated that "[b]ecause Ishibashi's original information image is too large to be displayed, Ishibashi breaks down the large image area recorded by the camera by averaging luminescence data." (Pl.'s Mem. Ex. B at Ex. 13, p. 17.) In other words, Ishibashi takes a preexisting large image data set and breaks it down into the individual parts that are separately displayed. In contrast, Bacus argued that the claims require the use of the created image tiles to create the larger composite image: "the image tiles of this invention [the '235 patent] **are combined to display even a larger area** than

---

[2] The relevant prosecution history is attached as Ex. 13 to Ex. B to Plaintiff's Proffered Construction Of Disputed Terms of the Claims in Issue in This Action ("Pl.'s Mem.").

2

a single original information tile image." (*Id.*) (Emphasis added.) In other words, the image tiles of the '235 patent must be parts of a larger image because they are used to build the larger image.

We call to the attention of the Court an unfortunate misquote from the specification of the '235 patent contained in the Defendants' rebuttal brief. The Defendants quote Column 11, lines 45 through 50 as follows: "[t]he optical array sensor sends electrical signals indicative of the detected image to microscope controlled computer 32. Then, computer 32 stores the scanned image including the top left X-Y stage coordinates *for the image tile*." (Defs.' Rebuttal at 6)(emphasis added.) In fact, the specification actually states "[t]he optical array sensor sends electrical signals indicative of the detected image to microscope controlled computer 32. Computer 32 stores the scanned image including the top left X-Y stage coordinates for *each of the 80 individual areas of the microscope slide*." (Column 11, lines 45 through 50.) (Emphasis added.) Thus, the true quote actually supports Bacus' proposed claim construction by showing that a scanned tile is a part of the larger microscope slide and thus is a part of a larger image.

The Defendants continue to argue that the phrase "image tile" includes the notion of a "single field of view." (Defs.' Rebuttal at 6.) This argument is directly rebutted by the parent application of the '235 patent which matured into U.S. Patent No. 6,101,265 (attached as Ex. 1). Claim 1 of the '265 patent recites "automatically scanning the selected segment of the specimen at the higher magnification to provide a plurality of spatially adjacent, single fields of view, higher magnification image tiles stored with information to align edges of contiguous image tiles . . ." (Column 12, lines 35-39.) If the phrase "image tiles" were construed to require in its meaning "single fields of view," or "information to align edges of contiguous image tiles," these additional limitations would have no meaning in claim 1 of the '265 patent. *See Novo Nordisk A/S v. Eli Lilly & Co.*, 1999 U.S. Dist. LEXIS 18690 at *52 (D. Del. November 18, 1999) ("The expression of a limitation in one element of a claim implies the exclusion of that term in other elements of the claim.") (copy attached). Thus, the intrinsic evidence also defeats Defendants' proposed definition of "image tiles."

### III.   THE PHRASE "DIGITALLY SCANNING" IN CLAIM 1 OF THE '235 PATENT

Bacus proposes that "digitally scanning" means "the successive analyzing according to a predetermined method of elements constituting a picture area in the form of digits." The Defendants argue that this ordinary meaning should not be used because the claim language requires an "optical

3

scanner" capable of scanning "at a resolution finer than the optical resolution of the objective lens of the microscope and with a digital spacing between pixels finer than the optical resolution of the objective lens." (Defs.' Rebuttal at 8.) However, "optical scanner" is not found anywhere in the claim. Further, contrary to Defendants' argument, creating image tiles "at a resolution finer than the optical resolution of the objective lens of the microscope and with a digital spacing between pixels finer than the optical resolution of the objective lens" is found in elsewhere in the claim and therefore excludes limiting the meaning of "digital scanning" with such a limitation so as to depart from its ordinary meaning. *See Novo,* at *52.

The specification does not set forth an explicit definition of the phrase "digitally scanning" that is different from its ordinary meaning as the Defendants have proposed. Nothing in the specification requires "digital scanning" to be limited to "receiving image signals representative of a field of view" as proposed by the Defendants. Bacus has demonstrated that the patentee has not clearly redefined the phrase, and to the contrary, Bacus' proposed definition is the ordinary meaning as supported by the patent specification. (Pl.'s Mem. at 12; Pl.'s Resp. To Defs.' Proposed Claim Constr. of Disputed Terms of the Asserted Claims ("Pl.'s Resp.") at 7-9.) Thus, the Defendants' proposed construction away from its ordinary meaning is incorrect. *Texas Digital,* 308 F.3d at 1204.

### IV. THE PHRASES "OVERALL MACRO VIEW" AND "OVERALL MACRO IMAGE" IN CLAIM 3 OF THE '235 PATENT

The context of the claim demonstrates that the phrases "overall macro view" and "overall macro image" have the same meaning despite using different terminology. The first element of the claim states "displaying a first image comprising a portion of the specimen as an overall macro view" thereby linking the phrase "first image" with the phrase "overall macro view." As such, one of skill in the art would understand the claim phrase "overall macro image" to be the same as "overall macro view." In fact, this meaning is so apparent that the Examiner did not object to this wording. Therefore, the ordinary meaning of "overall macro view" applies to both phrases.

4

## V. CLAIM 23 OF THE '235 PATENT

Defendants incorrectly state that the parties have agreed on the meaning of "multiple tiled images" (Defs.' Rebuttal at 11). Instead, in response to letters sent by Defendants' counsel, Bacus merely stated, "Regarding the phrases 'multiple tiled images' and 'image tiles" in the '235 patent, as discussed in both of your letters, while we agree with you that our [i.e. Bacus'] proposed constructions seem to be the same, nevertheless, we intend to provide constructions of those terms as found in our June 1, 2003 (sic) claim construction for completeness." See July 23, 2004 letter attached as Exhibit 2.

## VI. "MAPPING COORDINATES" OF CLAIM 14 OF THE '774 PATENT

Defendants argue that "mapping coordinates" must mean numbers used to determine a position "with respect to a fixed reference" rather than "relative to one another" as proposed by Bacus. (Defs.' Rebuttal at 17.) However, a "fixed reference" can be the rest of the image so that the mapping coordinates are "fixed" relative to one another. Further, Defendants' argument incompletely relies exclusively on a dictionary definition of "coordinates" and does not take into account the dictionary definition of "map" (i.e. "the correspondence of elements in one set to elements in the same set or another set." (See Bacus'initial claim construction brief at 20.)

Regarding Defendants' further argument the mapping coordinates refer to position on the microscope stage, Defendants are merely improperly reading this limitation from the disclosed preferred embodiment.

## VII. THE PHRASE "CONTROL INFORMATION" OF CLAIM 1 OF THE '941 PATENT

Bacus proposes that "control information" means "processed, stored, or transmitted data with the ability to manage or direct" as supported by the context of the claim and the specification. The Defendants attack the definition by stating that data cannot literally manage or direct. This approach is an attempt at word games. One skilled in the art understands that although an inanimate object such as data cannot manage or direct, the data may be used to manage or direct. The claim language makes this clear: "transmitting control information to the requesting computer **for use in** aligning ..." (Column 40, lines 11-12.) (Emphasis added.) Bacus's proposed definition is supported by the specification as stated in the previous briefs. (Pl.'s Mem. at 21; Pl.'s Resp. at 18-19.)

5

                Respectfully submitted,

Dated: August 13, 2004

*/s/ Nicholas T. Peters*
John F. Flannery
Karl R. Fink
Timothy R. Baumann
Nicholas T. Peters
Kenneth E. Plochinski
FITCH, EVEN, TABIN & FLANNERY
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603-3406
Telephone (312) 577-7000
Facsimile (312) 577-7007

*Attorneys for Plaintiff, Bacus Laboratories, Inc.*

349198

See Case File
For
Exhibits